IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MONTE MATTSON,

                Plaintiff,

v.                                           OPINION and ORDER

FRANK BISIGNANO,                               23-cv-700-jdp
Commissioner of the Social Security Administration,

                Defendant.[1]

---

Plaintiff Monte Mattson seeks judicial review of a final decision of defendant Frank Bisignano, Commissioner of the Social Security Administration, finding that Mattson was not disabled within the meaning of the Social Security Act. Mattson contends that administrative law judge (ALJ) Dean Syrjanen failed to adequately account for his moderate mental health limitations in determining his residual functional capacity. The ALJ's decision is supported by substantial evidence, and Mattson has not identified any legal errors in the decision, so the court will affirm the decision.

BACKGROUND

The case has had a complicated procedural history that drastically narrows the time that is relevant to the determination of disability. R. 800.[2] Mattson originally applied for disability benefits alleging disability beginning February 23, 2013. That application was denied after a hearing. R. 131. Mattson filed a second application, which was also denied. Although

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

[2] Record cites are to the administrative transcript located at Dkt. 3.

Mattson requested a hearing, he withdrew that request. As a consequence of these prior applications, the determination that Mattson was not disabled as of December 4, 2018, is conclusive.

In his third application, the one currently before the court, Mattson alleges that he was disabled from December 5, 2018, to his date last insured, December 31, 2018. ALJ Syrjanen held a telephonic hearing at which Mattson appeared personally and through his counsel. R. 16–33. On March 4, 2021, the ALJ issued an opinion finding that Mattson had not been under a disability within the meaning of the Social Security Act from December 5 through December 31, 2018. R. 863–80. Mattson appealed the ALJ's decision to this court, which remanded the case for reconsideration of Mattson's mental limitations. R. 887–98. On remand, ALJ Syrjanen conducted a new hearing, R. 821–46, and issued a new decision, R. 797–820.

The ALJ found that Mattson suffered from the following severe impairments: cervical degenerative disc disease, anxiety disorder, and depressive disorder. R. 803. The ALJ found that Mattson had the residual functional capacity (RFC) to perform light work, with some additional physical restrictions that are not relevant to this appeal. R. 806. As for his mental capacity, the ALJ limited Mattson as follows:

> The claimant is also limited to simple, routine, and repetitive tasks; is limited to jobs with no fast paced or inflexible production requirements (such as assembly line work) but end of day quotas or production requirements are acceptable; is able to maintain attention, concentration, persistence, and pace for the performance of simple, routine, and repetitive tasks for two hour periods throughout an eight hour workday; is limited to jobs involving simple decision making and simple changes that occur no more than occasionally; is limited to jobs where tasks can be performed independently and that do not involve tandem tasks or collaboration for the performance of work duties; and is limited to occasional interaction with supervisors, coworkers, and the public.

*Id*. Relying on the testimony of a vocational expert, the ALJ found that Mattson could not perform any of his past relevant work, but he was not disabled because she could perform jobs that exist in significant numbers in the national economy, such as housekeeping cleaner, small product assembler, or office helper. R. 813.

Mattson again appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

Mattson raises three issues on appeal. First, he contends that the ALJ wrongly failed to include in the RFC all the restrictions suggested by two state-agency psychologists concerning his limitations in interacting with others. Second, he contends that the RFC fails to accommodate his moderate limitations in maintaining concentration, persistence, and pace. Third, he contends that the ALJ wrongly discounted his subjective descriptions of his mental health symptoms.

A. Limitations in social interactions

Two state-agency psychological consultants reached nearly identical conclusions, finding Mattson to be moderately limited in several areas of social functioning, specifically in (a) the ability to interact appropriately with the general public, and (b) the ability to accept

3

instructions and respond appropriately to criticism from supervisors. R. 107; R. 126. In other areas of social interactions, the consultants found no significant limitations. In the narrative explanation of his social limitations, they both said:

> Claimant and [Mattson's wife] note frequent irritability. He will often become irritable with his wife or those around him. However in all visits he is always pleasant and cooperative. Due to [symptoms] of depression and anxiety, he would likely struggle to accept instructions and respond appropriately to criticism from supervisors. He would be better suited for a job that has little contact with the general public.

*Id*.

The ALJ found the opinions of the consultants "somewhat persuasive overall." R. 809. But the ALJ did not wholly adopt the specific limitations proposed by the consultants. The ALJ allowed "occasional" interaction with the public, and he did not accept the conclusion that Mattson would struggle to accept criticism and respond appropriately. The ALJ explained his deviation from the consultants in a substantial paragraph. R. 810. The gist of the explanation is that the reports of irritability derive exclusively from subjective reports, and the consultants did not cite corroborating evidence. And, according to the ALJ, these limitations are not consistent with the treatment records during or near the relevant time, December 2018.

On appeal, Mattson challenges this portion of the ALJ's decision on three grounds: (1) the medical records did support the consultants' limitations; (2) psychologists are entitled to rely on subjective reports; and (3) the RFC includes restrictions for the "quantity" of interactions with supervisors, but not the "quality" of those interactions. None of Mattson's arguments are persuasive.

As for whether the medical records supported the consultants' limitations, Mattson says that the records

4

> documented mental status evaluations findings including poor insight, anxious, irritable, stressed, and depressed mood, difficulty concentrating, easy distraction, and "limited memory due to other complicating behavioral health factors" and assessed Mr. Mattson with recurrent major depressive episodes, panic disorder with agoraphobia, anxiety disorder, anxiety state, and chronic pain. (*e.g.*, AR 371-372, 375-376; 408, 411, 422, 426, 431, 493.)

Dkt. 4, at 6. There's no dispute that Mattson suffered from depression and anxiety and that he underwent treatment for those conditions for years. But a diagnosis alone does not establish specific limitations on the ability to work. Most of the records that Mattson cites are treatment notes from four to five years before the relevant period: R. 408; R. 411; R. 422; and R. 426; R. 431. These records are not very telling about Mattson's mental status in December 2018. And even these older records show that his symptoms were generally well controlled with medication, and that he was polite and cooperative during visits.

Mattson cites two records that are somewhat closer to the relevant time: treatment notes from September 2017. R. 371–72; R. 375–76. On September 5, 2017, Mattson had a routine follow up for medication management in the psychiatric clinic. R. 373-76. The notes say that Mattson "verbalized improvement in his mood and anxiety symptoms on his current medication regimen though intermittently still anxious." R. 374. On September 28, 2017, Mattson had a routine visit to get refills of his mediation. R. 369-72. His primary concern was chronic neck pain. The notes indicate chronic mild anxiety and depression, but there is no reference to social difficulty.

Mattson cites only one record from the relevant period. On December 21, 2018, Mattson had a routine follow-up for medication management in the psychiatric clinic. R. 490–93. Mattson reported that he had been quite anxious because he had reduced his clonazepam dose by half, apparently on his own initiative. His physician advised him to maintain the

5

prescribed dose. There is no mention of any social difficulties. The treatment plan provided for further follow-up in four to six months, sooner as needed, which suggests that his psychological symptoms were generally well controlled on the treatment plan. The next record in the transcript is a treatment note from July 2019, in which Mattson reported improvement in his mood and anxiety symptoms and ordered another six-month follow-up. R. 494–97. These records from December 2018 and January 2019 do not describe a man debilitated by psychological symptoms.

Mattson's other two arguments fail for similar reasons. As for the consultants' reliance on subjective reports, Mattson cites *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019), and *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015), for the proposition that it is appropriate for psychologists to "analyze . . . subjective statements and weigh them against objective findings and observation." Dkt. 4, at 6. But neither *Mischler* nor *Price* hold that the ALJ is required to defer to a psychological opinion simply because the psychologist relied on the claimant's subjective reports. Rather, this court has previously stated that the "key question" under *Mischler* and *Price* "is whether the report of the psychologist or psychiatrist indicates that he or she used 'professional expertise' to assess the claimant's credibility. *Hager v. Kijakazi*, No. 20cv-788-jdp, 2021 WL 3088060, at *5 (W.D. Wis. July 22, 2021). And even if it is appropriate in some circumstances for a psychologist to rely on subjective symptoms, the ALJ is still entitled to consider how well supported those opinions are and whether they are consistent with other evidence. *See* 20 C.F.R. § 416.920c(a); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).

In this case, the consultants' sole basis for the additional limitations regarding interacting with others was that Mattson and his wife reported that Mattson was often irritable.

Mattson does not point to any portion of the opinion that attempts to "analyze . . . subjective statements and weigh them against objective findings and observation" or that indicates the consultant relied on professional expertise to assess Mattson's credibility. Further, as already discussed, many of the subjective reports were well outside the disability period, and none of the medical evidence that is closer to the relevant time suggests greater limitations than what the ALJ found. So the ALJ was not required to defer to the consultants' reliance on Mattson's subjective complaints.

As for the failure to include a restriction for the "quality" of interactions with supervisors, the court rejects this argument for two reasons. First, the ALJ *did* implicitly include such a limitation by restricting Mattson to jobs with only simple decision making and involving only simple, routine, and repetitive tasks. That sort of work is unlikely to require extended or probing feedback from a supervisor, so the nature of the interactions between the employee and supervisor will tend to be superficial and less stressful. Second, even if the consultants' opinions could be read as requiring an additional restriction for superficial contact with supervisors, the ALJ's decision not to include such a restriction was supported by substantial evidence. Again, Mattson points to no contemporaneous evidence supporting a restriction that he could not get along with supervisors.

The bottom line is that the ALJ's decision to discount some of the state psychological consultants' specific recommendations is amply supported by the record evidence and it was adequately explained by the ALJ.

B. **Limitations in maintaining concentration, persistence, and pace**

The state agency psychological consultants found that Mattson was moderately limited in the ability to maintain concentration, persistence, and pace for extended periods, and in the

ability to complete a normal workday without disruption from psychological symptoms. R. 106–07; R. 125. They found no significant limitations in other areas related to concentration, persistence, and pace. The ALJ endorsed these opinions, and he explained that the limitations in the RFC would accommodate Mattson's moderate limitations. R. 810–11.

On appeal, Mattson objects that the RFC would not adequately accommodate his moderate limitations. The gist of his argument is that working for two hours without a break is simply an ordinary workday, and thus no accommodation at all. Dkt. 4, at 11. The fundamental problem with Mattson's argument is that "moderately limited" does not mean "incapable." Rather, one who is "moderately" limited in an area can produce "fair" performance in that area. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). Mattson's position would mean that one with moderate limitations in concentration, persistence, and pace would be incapable of any work subject to any performance standard, which is tantamount to saying that such a moderate limitation would preclude employment. No court has ever held that.

The RFC proposed by the ALJ accommodates the limitation in maintaining concentration, persistence, and pace not only by providing breaks at least every two hours, but also by ruling out fast-paced or inflexible production quotas, and by limiting Mattson to independent work. Thus, momentary lapses in concentration and persistence could be accommodated without disrupting the work of others. Mattson has not pointed to any evidence in the record that would support further limitations on his ability to work.

C. Assessment of Mattson's subjective symptoms

Mattson contends that the ALJ erred in assessing his subjective symptoms. Mattson contends that the ALJ cherry-picked the evidence that showed normal findings, ignoring the evidence that Mattson suffered from more severe symptoms.

Mattson suffered from anxiety and depression, and sought treatment for those conditions, for years. But the question before the ALJ was whether Mattson was disabled by anxiety and depression so that he could not work between December 5 and December 31, 2018. Mattson testified that he was so disabled. One of the tasks for the ALJ was to evaluate whether Mattson's self-reports were consistent with the evidence of record. The court will uphold the ALJ's evaluation of a claimant's subjective reports unless it is patently wrong. *Murphy v. Colvin,* 759 F.3d 811, 816 (7th Cir. 2014).

The ALJ's evaluation of Mattson's reports of disabling anxiety and depression is amply supported by the treatment notes from the relevant period and immediately after, as discussed above. R. 490–93; R. 494–97. Mattson has not pointed to any treatment notes or medical records near the relevant period that suggest he was suffering from regular debilitating panic attacks or any other debilitating psychological symptoms. It is not cherry-picking for the ALJ to focus on December 2018 as the relevant period.

Mattson contends that the ALJ wrongly considered his activities of daily living. The court is not persuaded. Activities of daily living played only a minor role the ALJ's decision. The ALJ cited them at step three, in considering the severity of his mental impairments, not at step four in determining the RFC. Mattson's activities of daily living were fairly limited, but as the ALJ observed, even driving, going to doctor appointments, making simple meals, and living with another person require the ability to process and remember information and interact with others. The court sees no error in the ALJ's citation of Mattson's activities of daily living.

Finally, Mattson complains that the ALJ did not consider his 30-year work history. That is a factor that might count in Mattson's favor. But the ALJ is not obligated to explicitly discuss it, *Penrod v. Berryhill*, 900 F.3d 474, 478 (7th Cir. 2018), particularly if he deems the rest of

9

the evidence to be more telling. In this case, the prior conclusive findings that Mattson was not disabled by December 4, 2018, makes his long-past work history nearly irrelevant.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment and close the case.

Entered September 30, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge